The next case is 417-0817. People of the State of Illinois v. Duane Croom. For the Appellant, Ms. Carrara-Wilson. And for the Appellee, Ms. Shepard. Ms. Carrara-Wilson. Ms. Carrara-Wilson. My name is Salome Carrara-Wilson, and on behalf of the Office of the State Apology Center, I represent Duane Croom. The resolution of the issues in this case lies in well-established precedent from the United States and the Illinois Supreme Court on the safeguards that must be taken before a court can sentence a juvenile to a life in prison. Following the Illinois Supreme Court decision in Buffalo, there is no doubt that Duane is serving a de facto life sentence of 50 years that was imposed on him for an offense committed when he was 16. There is also no question that the sentence Duane is serving was imposed on him before the United States Supreme Court decided a new line of pardoning, limiting life to authorial sentences for all but the rarest of juvenile offenders whose crimes need life-permanent incorrigibility. What the state disputes is whether the sentencing court is required to make a finding that Duane was permanently incorrigible before sentencing him to a de facto life sentence. The state's argument that no finding of permanent incorrigibility is required has no merit in light of the Supreme Court's established law. In Holman, the Illinois Supreme Court recognized that under Miller v. Montgomery, juvenile defendants may be sentenced to life imprisonment without parole but only if the court determines that the defendant's conduct shows irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. Although there is currently no requirement that the trial court use those words, incorrigible, the record must show that the trial court addressed that question. The court makes that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics have been commonly known, referred to as the Miller factors, and includes a consideration of the defendant's chronological age at the time of their offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risk, and as we've argued in this case, the prospects for rehabilitation. Since the decisions in Miller v. Montgomery, the United States Supreme Court has further clarified that it is required, what is required, before sentencing a juvenile defendant to a life in prison. In Tatum v. Arias, when a Justice Sotomayor stated in a proposed opinion, on the record before us, none of the sentencing judges addressed the question Miller v. Montgomery require a sentencer to ask, whether the petitioner was among the very rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility. In Stafford, this court affirmed a life sentence imposed on a juvenile for first degree murder because this court found that the trial court's reasoning conveyed the finding that he was one of the rarest juvenile offenders whose crimes showed that a life sentence was appropriate. In Dwayne's case, looking at the cold record as this court is required to do, and particularly the court's reasoning, there is no showing that the court found that Dwayne was fundamentally incorrigible and incapable of rehabilitation. Indeed, the court's findings and the court's reasoning focused on giving Dwayne a sentence that would deter others. It did not focus on Dwayne's failure to have any prospects for rehabilitation. Indeed, when the court was addressing Dwayne's motion for him to file a successful post-conviction, the court noted that Dwayne would still have a chance to leave prison when he was 67 years old. This again reflects that the court did not intend to sentence Dwayne to a life sentence. In this case, the court stated on the record when sentencing Dwayne that it had been considered in mitigation that he was 16 years old. However, more than just stating on the record what his age was is required. As in People v. Harvey out of the First District, the court said, Following Markle, we conclude that the court's mere awareness of a defendant's age and consideration of a PSI does not provide evidence that the circuit court specifically considered the defendant's youth and its attendant's circumstances. Similarly, in Stafford, this court considered the fact that the defendant was 17 years old at the time of the offense. The court in that case said that it struggled with the defendant's age. Here, the court said that defendant, though 16, was sophisticated enough, intelligent enough, and articulate enough to establish their evidence. In characterizing Dwayne in this manner, the court was evaluating Dwayne by comparing him and his maturity to that of an adult. Thus undermining the central holding in Miller because children are different, and Dwayne's actions shouldn't be considered through the lens of a child or through the lens of youth. Again, here, as in Hallman v. Stafford, there is no specific evidence related to Dwayne's prospects for rehabilitation. It is not mentioned in the PSI, and the court does not mention it in its ruling. Because the court failed to consider at least two of these Miller factors, and the record does not indicate that the court determined that Dwayne was permanently inheritable, that he was one of those rare juveniles for whom a life sentence is constitutional, we ask that this court grant Dwayne a new sentencing hearing. This remedy comes from Butler, because looking at the full record, there is nothing else that needs to be established in an evidentiary hearing in a post-conviction proceeding. Therefore, in the interest of judicial autonomy, this court should grant Dwayne a new sentencing hearing and vacate his 50-year sentence. If this court has no questions. I see none. Thank you, Ms. Wilson. You have an opportunity on rebuttal. Ms. Shepard. Thank you, Mr. Court. Counsel? I was prepared to talk about the portion of the Court of Counsel's argument that the trial court was required to separately make a finding of irretrievable depravity and permanent incorrigibility. But it sounds like now, from the Court of Counsel's argument in this courtroom, that the argument is that as long as the trial court addressed that question, that is enough. And clearly, the trial court did address that question. If, based on his sense of conduct in sentencing, which we put in our brief, that addressed all of the Miller and Holman factors, including the defendant's prospects for rehabilitation. And in talking about the defendant's conduct and his character, the trial court did talk about how the defendant was mature beyond his years. The evidence showed he was not immature, impetuous, or failed to appreciate risk or consequences. The court didn't use that language, but clearly made that determination. Because the court talked about how the defendant planned and carried out a scheme to obtain control over his disabled husband and her Social Security income, to continue his personal healing enterprise, to move Bolton and the victim, Altrevious, away from Bolton's family and law enforcement, who had interfered with his plan. And he also, in committing the offense, this was not a one-time anomaly. He had beaten this poor child over a period of weeks, repeatedly. Altrevious had many wounds on him, healing wounds. So the trial court did look at the things that the Supreme Court, the U.S. Supreme Court, and the Illinois Supreme Court, say that it's supposed to look at in sentencing. And it was very careful. Unlike in Holman, I would point out, where the trial court's comments were very brief. And yet, our Supreme Court still found that because the court had explicitly stated and considered the PSI, the evidence of trial, the arguments of sentencing, that still constitutional requirements were met, even though the trial court in that case said comparatively little compared to our courts or the trial court in this case. So, I would rely on our brief. Unless the court has any questions. Yes, Ms. Shepard. Yes. I want to ask you about the Murphy case that this court recently decided. And ask how you would distinguish this case from Murphy. In this case, the trial judge, at the time of sentencing, indicated that the defendant was intelligent, articulate, and I think has a lot of potential. Yes. Murphy, this court said, the court's use of the words, or finding, that the defendant possessed rehabilitative potential, contravenes any conclusion defendant was permanently incorrigible or irretrievably depraved, and is therefore unconstitutionally at odds with the fact of life sentence without parole for a juvenile offender. So, how is the trial court's comment here, that defendant has a lot of potential, different from the trial court's comments in Murphy, where the defendant found the defendant had rehabilitative potential? It's different in at least two important ways. One is that, of course, the trial court was not finding that defendant had rehabilitative potential. And we always have to, as you're well aware, always have to look at the trial court's comments in sentencing in the context. And in context, the court was saying that defendant, let's see, he said he's a young man, well, as you quoted, but also he talked about, the trial court talked about how he had used those talents for main crime, that he had all that potential, he was intelligent, and instead of using it for good ends, he used it to spirit Rochelle Bolden away from the family, escape law enforcement in the process, who had executed a search warrant of the residence and found the drugs and guns, and engaged a long-term scheme to get her away from her family, who would have interfered with his getting her Social Security check, setting up a drug dealing operation in Champaign. And the trial court's comments repeatedly, the trial court's comments in many ways stated that the defendant was older than his years. Well, are you saying that Judge DeFantis was communicating that what he meant was potential to do bad, as opposed to potential to do good? Exactly right, Your Honor. And also, in the next breath, and I don't have the quote right in front of me, but I think that the trial court also said that we don't know what poor three-year-old D'Entrevis' potential was. And so it was a contrast with, you know, he took away the potential that this young man, this young child, had. So, yes, in context, the trial court clearly was not saying that the defendant had mediocre potential, but he had skills that he used for bad things, for committing crimes, over a long period of time. Wouldn't that be an odd way of phrasing he poses a danger to society, which is what you're describing? To say someone has a lot of potential? I think it shows that the trial court was being careful in considering all the things that it had to consider, in saying, you know, I'm not going to just look at this defendant through a certain lens, but I'm going to look at him as a whole person. And, yes, he does have these other attributes, but we have to look at how he used them and what he did. And so those are just the facts of the case. And, of course, what does it mean to make the determination that the defendant is beyond rehabilitation? And the rehabilitative potential is one of the factors that Holman and Milner say that the trial court has to consider, but also implicit in a life sentence would be, or de facto life sentence, would be the determination that the defendant is beyond rehabilitation. And we can't lose sight of the fact that at the time the sentence was opposed, there wasn't any problem with the way the trial court phrased its wording here, or approached the sentencing. It's what happened later in the Supreme Court. Exactly right, of course. And so are we going to fault the trial court for using that one word? We have to look at it again in context. And what did it mean? Did the trial court, was he really saying that the defendant had some rehabilitative potential? No, he was saying the opposite. He was saying this defendant had these attributes and he used them for bad things over a long period of time and had this scheme of taking advantage of his poor, disabled mother. And as the prosecutor, the trial court also said it had considered the prosecutor's arguments on sentencing. And, of course, the court had presided over the trial, where he proved this evidence that the defendant had beaten the poor child over a long period of time. So the things that the Supreme Court, U.S. Supreme Court, Illinois Supreme Court, the principles behind these cases don't apply to the defendant because these special considerations that we look at for youthful offenders don't apply to the defendant. He was not impetuous or didn't appreciate risk, but he was very calculated and used these attributes that he had for criminal ends instead of anything that would be good. So, counsel, if I understand your argument that there are no magic words, and I agree with that, but there has to be some kind of implicit finding by the trial court that there's no rehabilitative potential. And you think we have that here? Yes. Okay. And I admit it's a difficult thing for us to determine what the trial court was actually thinking. And I get, I think, your argument that this potential for, what was the language that this trial judge used? He has a lot of potential. A lot of potential, yeah. And you're saying, I guess, as I understand, that that was kind of in a negative way. Absolutely. He completely ruined all the potential that he had, and now is not capable of being rehabilitated. That's the way, at least, that you would construe what the trial court did here. Yes, Your Honor. Or some way like that, yeah. And I did quote all this in my brief back here. Right. And after he said this, the trial court, he's got a lot of young men who are the age of 18 and should be finishing high school, given his abilities, thinking about some other forms of future education. But he sits here now waiting to be sentenced for murder. And he took away two lives. The defense took away two lives, his and the child's. We don't know what the child's potential would be. So in context, he's saying that he had used his talents for criminal events over a long period of time, which he talked about in referring to the long-term scheme that the defendant engaged in with taking his and his mother away from the family and keeping it all calculated, and, of course, beating the child over a long period of time. If the trial court had used the phrase, as in Murphy, rehabilitative potential, instead of a lot of potential, you wouldn't be arguing as you do today. Is that right? I would be arguing as I'm arguing because there is another case out there where, and I didn't bring it up today because counsel didn't address Murphy, but there's another case from First District Lopez where the court made similar comments to the folk on the front, talked about the defendant's rehabilitative potential. So it's not magic words, as you say. And, of course, as you say, we're looking at all of this years after the fact. Look at the entire record. Look at the context. Look at what the court said. Look at the evidence that the court was considering, the PSI, the arguments in sentencing. And was the trial court's decision, based on all of that, was the court really doing something wrong somehow and not adequately considering whether the defendant's youth and attendance circumstances were a small part of the crime under the sentence? And the record would show that the court was very careful and did consider the defendant's particular characteristics and found that this was an appropriate sentencing. It was constitutional. Okay, and just to be clear then, you think there's a First District case and it's likely people v. Lopez? Lopez, and I wish I had a test. Well, I can find where actually the trial court did use or did suggest there was rehabilitative potential, and yet... They affirmed. They still affirmed, okay. It's just my memory, and without it right here in front of me, I don't want to say absolutely that's what they held, but that is what I remember. Okay. And I would note that, knowing the court has cited Murphy at this point. Okay. I see none. Thank you, Ms. Shepard. Ms. Wilson. It was said by addressing the contention that the trial court's words about the potential that Duane exhibited was a potential or somehow shows a dispotential for doing harm or for being a criminal, but the court discusses his intelligence, his articulate, he should be in college or finishing school, on one page. There's several paragraphs in between that. We're talking about context. Before the court addresses the state's argument, as the court puts it, that he's sophisticated, intelligent enough to have done all these things, and then the court says, but nevertheless, the fact that he's 16 years away from resource center is a factor in negation. The court is not finding a potential for Duane to continue committing crimes. I don't believe the record bears that out. And in any case, the potential for rehabilitation is forward-looking. It's not what Duane has done in the past. It's whether or not Duane has the potential to be rehabilitated in the future. And on this record, the court simply did not make that finding. And the finding of feminine incorrigibility has to be made. That is the whole point of Bill and Montgomery in all those cases. The court doesn't have to hold a separate hearing just for the specific feminine incorrigibility or use any magic words, but the case law has shown over and over again that that finding has to be made before you sentence a juvenile to a life in prison. So it is magic words, as long as you say the magic words. No. Sorry. You do not need to use magic words. You don't need to use the phrase incorrigibility or permanently cannot be rehabilitated. But the record actually shows... Well, if you don't, then somebody's going to be standing up here making this argument. No. My argument is that the record does not show that the court made that finding. The record does not show, the court's reasoning does not show that the court found that Dwayne was femininely incorrigible. The court's sentence of 50 years is based off of the need to deter others, not because of something that's specific to Dwayne, but because the court finds that others need to be deterred from committing a similar crime. And the fact that the court, when ruling on his motion, found successive petition notes that he has a chance to come out of prison at age 67 and shows this court was not intending to sentence this Dwayne to a life in prison. In Holman, the state says that in Holman the consideration of the PSI... So that wasn't his intent, but you're still saying it needs to go back because he didn't use the right words. No, because he didn't do the consideration he was required... Well, you just said it. He doesn't intend it. He didn't intend it to be a life sentence. You're saying the trial judge... If I understood you correctly... Hang on a second. You're saying the trial judge did not intend for it to be a life sentence. However, because he does not say what these cases have said you need to say, we are going to... You want us to send it back. Right? You just said the trial judge did not intend it. You yourself. Yes. The judge did not intend a life sentence. But because we have not... He has not shown the proper... But that is not inconsistent with the argument. The argument is the court has to find that Dwayne was found to be incorrigible. He got a sentence into a life sentence. The state's argument is the court made that finding. He doesn't think he's subject to... If he doesn't think that he needs or should receive a life sentence, that's not enough. Perhaps I'm misunderstanding you, Justice Taylor. You're saying the judge did not intend. By the other statements that he made, he did not intend it to be a life sentence. However, we're going to presume that that's what he's intended and we should send it back. No. The Supreme Court says a 50-year sentence is a life sentence. Dwayne has a 50-year sentence. In order to come to that conclusion, the court had to find that Dwayne was found to be incorrigible beyond rehabilitation. The court did not make that finding. The court never intended, never found him to be so deprived, so weak into that category of a rare juvenile that he needed a life sentence. Therefore, the court did not... It seems to sound like the same phrases over and over again. Which means that as long as you use the phrases, you're good. I mean, if you use the phrases, it doesn't hurt, but you don't need the phrases. But the reasoning in the cold record has to show that those findings were made. This record does not show that. So you're saying if you do use the magic words, but the record doesn't back it up, then that's not good enough either, right? I think that would be the opposite, right? That's not the case we have in front of us. We don't, you're right. If the court says the words with the record, I'm not sure... Well, as long as he says, I've taken into consideration the facts of the offense, I've taken into consideration the pre-sentence investigation report, I've taken into consideration all the factors in aggravation mitigation, all the evidence that's been presented before me, I hereby find that he is irretrievably depraved, he's permanently incorrigible, irreparably corrupt beyond the possibility of rehabilitation, 50 years, boom, done. We're out of here. Depending on what the PSI and what the reasoning of the court, and that's a fight for another attorney, but depending on what the PSI and what the rest of the reasoning of the court would be, then it could be looked at depending on the facts of the case. I see I'm out of time, but I will just briefly say that if this court requires additional briefing with Marky and Locas, we would appreciate the opportunity to address that. Thank you very much, ladies. We'll take this matter under advisement. The court is adjourned for the day.